# Anderson, *et al* v. Buckley, *et al.*

*Bill by Minority Stockholders for an Accounting to Remove the Trustees, and for a Receiver.*

(Decided May 31st, 1906.   41 So. Rep. 748.)

1. *Insurance; Dissolution of Company; Assets.*—Under a resolution passed by the directors of a fire insurance company, among whom were complainant minority stockholders, certain stockholders of the company gave demand notes equalling in amount their stock in the corporation; the resolution provided that upon a dissolution of the corporation or upon the winding up of its affairs, such of the stockholders as did not make contribution in the shape of such notes, should not be entitled to par-

[Anderson, *et al.* v. Buckley, *et al.*]

ticipate in any fund to be derived therefrom. Such contributions were intended for the benefit only of the creditors of the company. The corporation was dissolved, and all of its debts and demands paid. Held, that though the notes were supported by a consideration, in that they were given to raise the capital stock of the company to a sum where it could continue business without forfeiting its charter, the non-contributing stockholders were not authorized to seek a collection of the notes and participate in the distribution of the proceeds of the same.

2. *Estoppel; Representation.*—A statement was filed by the insurance corporation under § 1109, Code 1896, showing the corporate assets, etc., the notes were put in as part of the assets of the corporation, and by the statement a continuation of the company's franchise was secured. Held, this fact did not estop the shareholders, who had executed the notes, from denying that they were unconditional obligations.

APPEAL from Montgomery City Court.
Heard before Hon. A. D. SAYRE.

This was a bill filed by appellant and others, minority stockholders, against the appellee and others, as board of directors, alleging the incorporation of the Capital City Fire Assurance Company, the expiration of its charter by limitation, its dissolution, and the winding up of its affairs by its board of control. It charges that valuable assets in the shape of notes of various parties, among them a number of trustees of the corporation, and other valuable assets, have passed into the hands of these trustees, and that the outstanding debts and liabilities of the corporation amount to not more than $40,000. The bill also alleges that the trustees or board of control are making no effort to collect the notes, but are permitting the same to become barred by the statute of limitations. The prayer is for an accounting by the defendants named respectively herein, that they be removed from being trustees of the corporation, and that some proper person be appointed, as a receiver to take charge of and collect the assets.

GUNTER & GUNTER, for appellant.—There is but a single question in this case, and that is, whether or not certain notes referred to are assets of the corporation. The

notes were given to enable the company to show that its capital stock, $100,000, was intact, and thus, to enable it to continue business and avoid a dissolution.—§ 1109, code 1896. This was ample consideration for the notes. He who commits a fraud cannot claim any right based on such fraud.—*Pitcairn v. Ogburn*, 2 Vesy. 375; *Dial v. Hair*, 18 Ala. 798. While the directors had the right to make the donation for the purpose it was made they could attach no condition thereto.—2 Thompson on Corp. § 1308-9; *Boyd v. P. B. R. R. Co.*, 90 Pa. St. 169; 10 Cyc. 413. The following cases are in point: *Williams v. Page*, 24 Beav. 654; *Clement v. Bours*, 1 Drew. 684.

HORACE STRINGFELLOW, for appellee.—The contributions evidenced by the notes were intended only for the benefit of the creditors of the company, and the debts were all paid, and under the resolution under which the notes were executed, if paid, they could not enure to the benefit of complainant.—*Collier v. Dick*, 111 Ala. 263.

HARALSON, J.—There is but a single question presented on this appeal, viz.: Whether certain notes executed by the respondents to Commercial Fire Insurance Company, should be treated as general assets of the corporation after dissolution and collected for distribution among the stockholders. The facts necessary for a fair consideration of the question are these: The notes were executed solely in pursuance of a resolution of the directors of the company at a meeting when respondents and complainant Anderson, all of whom were directors, were present. This resolution directed the vice-president to call upon the several shareholders to contribute to the capital stock of the company in proportion to their several holdings, "and to accept for such contributions the demand note of the contributors but upon a dissolution of the corporation or the winding up of its affairs such stockholders as shall not make such contributions shall not be entitled to participate in any fund to be derived therefrom. Such contribution being intended for the benefit only of the creditors of the company." Complain-

27.

ants were non-contributing .stockholders. Soon after the notes were given, the secretary and manager of the company, prepared the statement required by section 1109 of the code of 1896 to be filed in the office of the state auditor. This statement submitted to and approved by the directors, included these notes as part of the assets of the company and were filed with the auditor. · Unless the notes had been so used as assets of the company the condition of the company was such as it was regarded by the directors as subjecting the company to have its authority to continue business revoked by order of the auditor under authority of section 1203 of the code of 1886. The notes were wholly without consideration except as shown, were given for the accommodation of the company, to be used only as needed in payment of the company's debts, and none of the makers received anything for the notes. The debts of the company have all been paid and there is no need for the collection of the notes for the purposes expressed in the resolution under which they were given. It is now. contended that the notes should be collected as other assets and distributed among the stockholders generally.

When the case was here on a former appeal we held that "these notes are absolutely without consideration as to these complainants, who are not creditors, but merely shareholders of the corporation, and not contributing shareholders .under said resolution."—*Andersoon v. Buckley,* 126 Ala. 623,, 28 South. 729.

It is insisted under the facts as now presented a consideration is shown, that the notes were given to raise the capital stock of the company to a sum where it could continue business without forfeiting its charter; that a statement was filed including these notes as assets and on the faith of such statement it was permitted to continue business, and the stockholders suffered by the risk of losses by a continuance in business. These risks is said to be a sufficient consideration for the notes. If we concede for argument that such would be true that there was such consideration moving from the stockholders of the corporation as would render the contract binding,

it would become binding only according to its terms. The resolution under which the notes were given was a part of the contract.. The provisions that the fund should be for the benefit of creditors only, that non-contributing shareholders should not participate therein, was as much a part of the contract as if written in the face of the notes themselves. A consideration for a contract renders the contract binding if not otherwise illegal, but certainly a consideration cannot warrant the making of a different contract from that which the parties made themselves. We think the question of consideration vel non can work no advantage to complainants; it cannot change the term of the contract; it cannot make the notes inure to the benefit of those expressly excluded from their benefits.

We pass to a consideration of the question of estoppel. It is insisted that having reported these notes as part of the assets of the corporation in the statement required by law to be furnished the auditor and thereby secured a continuation of its franchise, the respondents are estopped to deny that the notes were unconditional obligations, that to set up that the notes were not absolutely bona fide assets for all purposes would be to perpetrate a fraud on the law, so to speak.

It is first to be noted that the filing of the statement under section 1109 of the Code of 1896, is required of corporations as such. It is the act of the corporate body. In making the statement the officers represented all the shareholders, including these complainants as well as those making the notes. If a fraud is perpetrated on the state by the make up of the statement, the shareholders, who reap the benefits of such alleged fraud, are not in a position to complain. It appears that the complainant, Anderson, had full knowledge of all the circumstances atending the giving of the notes as well as the purpose thereof, and also of the making out of the statement now complained of. While he says he did not favor the movement it does not appear that even a protest was made by him as to the propriety of the statement furnished the Auditor. If, as now contended, by the complainant, Anderson, the statement

to the Auditor was fraudulent and he did not approve of it, and was unwilling to assume the risk of injury to him as a shareholder by a continuance of the business, then he could have sought redress in the corporation, and failing there, other remedies were open to prevent the consummation of the illegal plan.

Again, the requirements of the law that insurance companies shall have a designated paid-up capital, and shall make statements to the Auditor of the assets and condition of the business, are manifestly for the benefit of the public who may have dealings with such companies. We would not say such statement is for the benefit alone of policy holders, or creditors of the company. Persons led to deal in the stock or bonds of such company on the faith of such statement, might be authorized to insist that those in the corporation responsible for the statement should make it good. But certainly such statement is not made for the information of the directors and shareholders of the corporation who own and control its property and affairs at the time it is made. These have other and direct sources of information, and as before pointed out, are responsible to the public for the statement itself. It is an elementary principle of estopel that the person who sets it up must have relied upon the truth of the statement; must have had the right to rely upon it, and must have altered his position for the worse, if the party estopped should gainsay the truth of the statement. If, as claimed, the report to the Auditor was misleading and fraudulent, these complainants have in no way been misled by it; they have not been induced thereby to alter their position for the worse. Estoppels are for protection, not for gain. It is not shown that complainants have suffered any injury by the matters complained of. It is not questioned that if the rights of creditors were involved the makers of the notes would be bound to respond. In fact, it appears that the whole movement was for the purpose of protecting, rather than injuring creditors, and incidently to prevent a premature and forced dissolution of the corporation resulting in probable injury to stockholders

by a hasty liquidation of its affairs. The makers of the notes are not shown to have had any interest whatever personal to themselves. Whatever benefits they derived, or hoped to derive, so far as the record discloses was in comon with all the shareholders, complainants included. We cannot conceive any equitable right in complainants to profit to the extent of their pro rata of the proceeds of these notes at the expense of their associates.

The decree of the chancellor is affirmed.

WEAKLEY, C. J., and DOWDELL and DENSON, JJ., concur.